UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

      Cameron W. Weingartner                        Case No. 04-18954 K

                         Debtor
------------------------------------------------------------------


OPINION AND ORDER


        This case squarely presents for decision a troublesome, recurring question that

this writer has heretofore addressed only on a case by case basis.  It is now time to state a rule of

general application for cases assigned to this Judge.

        The question is this: in a typical consumer Chapter 7 case, who is it who must

bear the expense of shepherding the Debtor through the process of turning over assets that are

clearly exemptible, but that have not yet been claimed exempt?  Is it the Debtor, the Debtor's

attorney, or the Chapter 7 estate's Trustee and the estate's creditors?

        Of course, the Court rules that it is the Debtor.  And if the fault is that of the

Debtor's attorney, then 11 U.S.C. § 329 disgorgement will be ordered as well, if properly

sought.[1]  But in this particular case, the Debtor will not lose all of his late-claimed exemption.

---

[1] If full § 329 disgorgement does not fully compensate the estate, and unless the conduct of counsel is otherwise sanctionable, then the debtor shall be liable, and any resulting dispute between the debtor and counsel is a matter for the Bar Association or the malpractice insurer.  Section 329 disgorgement has not been sought by either the Trustee or the Debtor in this case.

<u>BACKGROUND</u>

There is a range of practice among Chapter 7 Trustees in this locality.  (1) Some do not pursue an asset that the Debtor clearly "could" exempt, even though it has not yet been claimed exempt.  (2) Other Trustees pursue it only if the Debtor and counsel do not respond to the Trustee's direction to either amend to claim the exemption, or else waive the exemption.  (3) Other Trustees perceive their duty as requiring that they pursue the asset and oppose untimely amendments to the Schedule of Exemptions.  There is a spectrum among these three waypoints.

The Trustee Panel here seems to be spread about evenly across the spectrum.[2] The Trustee in the case at bar joins at least three other members of the Panel in tending somewhat between the second and third approaches.

Consequently, Debtor's counsel who appear here on a regular basis should understand that the Trustee that one "draws" in a particular case might have expectations that are different from some other Trustee in an otherwise similar case.

The situation in this case is that the Debtor had initially claimed a cash exemption in a very small bank account, and did not claim any exemption in a possible tax refund.  (The Petition was filed on December 8, 2004, and therefore, under the law as enunciated by this Court in numerous cases, a pro rata portion of any refund would come in to the Chapter 7 estate, subject to claim of a $2500 exemption under New York Debtor and Creditor Law § 283.)

---

[2]Where Trustees fall along the spectrum might even vary from case to case, based on the level of experience of a debtor's counsel, and that counsel's reputation for diligence and thoroughness before that Trustee.

At the meeting under 11 U.S.C. § 341 on January 13, 2005, there was discussion about the fact that the Debtor had received a refund of about $4,000 as to tax year 2003. The Debtor was uncertain whether he would receive any refund for 2004, because he and his child's mother (from whom he was estranged) had an informal agreement between them to alternate the claim of their child as a dependent, and the Debtor had been the one to claim the child as a dependent for tax year 2003.

The Trustee demanded to see the tax year 2004 tax return when it would be prepared, and he caused the Clerk of the Bankruptcy Court to "notice up" the case as a "possible" asset case.

The Trustee and Debtor's counsel exchanged one or more pieces of correspondence in this regard in February of 2005.

The Debtor then went, apparently for the first time ever, to a professional tax preparer. He was told that he would receive a refund of approximately $5,000 for reasons completely unrelated to his daughter. A copy of the return was provided to the Trustee on March 3, 2005. The Trustee computed the "pro rata" amount owing to the Chapter 7 estate and wrote to the Debtor's counsel on March 29, 2005, demanding that it be turned over when received. The Trustee did not exclude from that computation the amount that was clearly "exemptible" by the Debtor, but that had not been claimed "exempt."

On April 4, 2005, the Trustee filed a Motion for Turnover of the refund. The Debtor and his counsel amended the Schedules on April 5 to claim $2500 of the refund to be exempt, and on April 7 the Debtor, through counsel, filed opposition to the Trustee's motion to

the extent that it sought turnover of the amount that had so belatedly been claimed as exempt.

On April 11, 2005, the Trustee filed (under the case of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S. Ct. 1644, 22 Bankr. Ct. Dec. 1296 (1992)) an objection to the new claim of exemption.

On May 13, 2005, the Court granted the Turnover Motion and then scheduled further proceedings on the Trustee's objection to the amended claim of exemption.

Other appearances ensued,[3] and finally a full-blown evidentiary hearing (with subpoenas) was held on October 25, 2005. The Court then took the matter under submission, but on October 26, 2005, Debtor's counsel submitted further, unsolicited closing arguments (by letter).

Due to this writer's administrative error, this matter "fell through the seams" until the Trustee, on May 7, 2006, responded to what he thought had required no response - - the inappropriate October 26, 2005 letter from Debtor's counsel.

The matter having thus come back on the Court's "radar screen" last month, the question before the Court is "may the Debtor have his $2500 cash exemption from the monies held by the Trustee?"

It is key to an understanding of this issue that the Trustee, as the estate's own attorney, has had to do a lot of legal work since the 2004 tax return was discussed at the § 341 meeting on January 13, 2005, simply to get to the point where the exemption question has been

---

[3]The docket reflects that no fewer than ten pieces of filed correspondence were exchanged between counsel, and several court appearances were required, after the discussion of the tax refund issue at the § 341 meeting.

duly presented.  If a "possible" tax refund had been duly claimed exempt at the outset or

promptly after the § 341 meeting, none of these appearances and other efforts, at the estate's

expense would have been necessary.


FINDINGS OF FACT

The October 25, 2005 evidentiary hearing persuades the Court that there has been

no culpable conduct on the part of the Debtor that would otherwise taint his claim of exemption.

(Illustrative cases are: *In re Hannigan*, 409 F.3d 480, 482 (1st Cir. 2005) (bad faith by debtor

resulted in denial of motion to amend schedules); *In re Blaise*, 116 B.R. 398, 400 (Bankr. D. Vt.

1990) (allowance of amended exemption depends on factual considerations concerning "bad

faith"); (*Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (bad faith or concealment will bar

exemption).)  But that does not decide the question of who now shall bear the expense of the

Trustee's pursuit of this asset.  Will the belated claim of exemption be allowed in full so that the

estate will bear the expense of pursuing an asset that had not been claimed as exempt until the

asset was in the Trustee's hand?  Will the Debtor lose $2500 that he could have claimed exempt

but did not so claim until after the Trustee demanded its turnover?  Or will the late-claimed

$2500 exemption be allowed, but in accordance with such cases as *In re Karl*, 313 B.R. 827, 831

(Bankr. W.D. Mo. 2004), and *In re Koss*, 319 B.R. 317, 323 (Bankr. D. Mass. 2005), be

surcharged with the costs, to the estate, of pursuing the non-exempt part of the refund (as the

Trustee has prayed in the alternative)?

## DISCUSSION

Every issue presented here is committed to the sound discretion of the Court. Motions for turnover, objections to late claims of exemption, and surcharge.

It may or may not be relevant to the current procedural posture that the Chapter 7 Trustee now before the Court also serves as the Standing Chapter 12 Trustee for this Division of this District, and in that capacity he is aware of a January 27, 1995 unpublished decision by this writer in a Chapter 12 case that presents one similarity to the issue at bar. In the case of *Ontario Orchards, Inc.*, Case No. 87-10255 K, this Trustee, as Chapter 12 Trustee, filed a Motion to Dismiss an eight year old Chapter 12 case because he had received from the Debtor insufficient payments to execute the Plan, and because (he alleged) the Debtor had refused and failed to pay the final sum to complete the plan, and because there is a five year maximum length of a plan under Chapter 12, which had been grossly exceeded by the Debtor, and because the Trustee's demands for information had been ignored by the Debtor for many months.

Instead of defending that Motion to Dismiss, that debtor moved for leave either to modify its plan in such a way as the plan would be deemed "completed," or to leave the plan as it is but to apply for a "hardship discharge" under the pertinent provision of Chapter 12.

This writer stated,

**"the Debtor seems to think that grounds for dismissal somehow evaporate if there are still some statutory provisions by which the Debtor may prevail upon the Court to grant the Debtor greater relief against its creditors. It is as if the Debtor believes that the possibility [that the Court might [possibly] approve a plan modification or might [possibly] grant a hardship discharge, required that the Court place the Trustee's dismissal motion on hold (obviating the need for the**

**Debtor to respond to that motion) and take the Debtor's motions first.  In fact, the opposite is true.  Because the Trustee's motion is well-founded on its face and none of its essential elements has been placed in dispute, it should be granted unless the Debtor completes the current plan immediately.  The Court will not reach the Debtor's motion [to modify or to receive a hardship discharge]".  (The debtor in that case then did promptly complete the Plan.)**

The Debtor's counsel in the case currently at bar is not chargeable with awareness of that unpublished decision.[4]  However, he has been familiar with this writer's long-standing insistence, consistent with the above quoted decision, that debtors not be permitted to "side step" turnover motions or contempt motions by attempting to place themselves in the same position that would be enjoyed by a debtor who turns the asset over first (so that it is not dissipated and so that the statute and the orders of the Court are duly obeyed), and who then properly and promptly amends the claim of exemption, or who timely files a motion to exclude the asset or some portion thereof from the 11 U.S.C. § 541 "property of the estate."

Regular practitioners in this Court are, consequently, charged with knowledge of this writer's long-standing view that orderly process in any unit of the Judicial Branch requires that motions that have been properly made must usually be decided *seriatum*.  A proper motion for turnover of an asset that had not yet been claimed exempt may not be nullified by a responding claim of exemption.  Turn it over first, and then the Court will hear the matter of exemption or ownership.  The burden of staying ahead of the statute and of the rules of procedure must squarely be placed on a debtor and upon his or her counsel when the Trustee is

---

[4]Much of what is contained in this Decision was contained in an earlier ruling, and a letter from this Court.  But eventually there was full compliance with that earlier ruling and letter.

simply doing the work of the estate as required by 11 U.S.C. § 704.

In this particular case, this writer understands that he has not previously published a general principle applicable to all, in such situations, and so the relief that will be ordered below is not as severe as that which will be ordered in later cases.

Before rendering the Court's decision, this writer must note that there is chaos and waste in bankruptcy cases when Chapter 7 debtors shift the legal terrain, without consequences, from here to there and then to some other place, in response to a Trustee's responsible actions. Debtors and their counsel must cooperate fully under 11 U.S.C. § 521 and 542, and without "playing a cat-and-mouse game" (as this Trustee characterizes the present case).[5]

The fact that some Trustees might perceive their duty more generously toward a Debtor is of no moment. Debtors and their counsel must be prepared to follow the *Ontario Orchard's* admonition, and the admonition contained in this decision, regardless of which Trustee they "draw," in any particular case.

<u>CONCLUSION</u>

Given the possibility of previous uncertainties surrounding this question, and given the <u>understandably</u> uneven philosophy among Chapter 7 Trustees toward their duty in such cases, it is now ORDERED that the Debtor's $2500 exemption shall be allowed, but surcharged

---

[5]It is important to point out that this is not an uncommon complaint. It is not limited to this Debtor's counsel. It is lodged by every Trustee now and then in cases in which others of the ranks of debtors' attorneys are involved - - some "regulars" and some here only occasionally.

$750 to compensate the estate, in part, for the pursuit of the asset before it was claimed exempt,

and for the numerous appearances resulting from the belated claim of exemption.  This is on

authority of *In re Koss*, 319 B.R. 323, which this Court finds persuasive.

   SO ORDERED.

Dated:   Buffalo, New York
      June 14, 2006

            s/ Michael J. Kaplan

           _____

               U.S.B.J.